5 A.3d 804 (2010)
416 N.J. Super. 445
Steven SANTANIELLO, Appellant,
v.
NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR SERVICES, Respondent.
No. A-4948-08T1
Superior Court of New Jersey, Appellate Division.
Argued September 28, 2010.
Decided October 22, 2010.
*806 Steven L. Menaker argued the cause for appellant (Chasan Leyner & Lamparello, P.C., attorneys; Mr. Menaker and Kirstin Bohn, Secaucus, of counsel and on the briefs).
Lisa Marie Albano, Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Rachana R. Munshi, Deputy Attorney General, on the brief).
Before Judges PARRILLO, YANNOTTI, and ESPINOSA.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Appellant Steven Santaniello is an Emergency Medical Technician (EMT)-Paramedic, currently on inactive status, who challenges the validity of regulations of the Department of Health and Senior Services (Department) governing the recertification of EMT-Paramedics pursuant to the Emergency Medical Services Act (EMS Act), N.J.S.A. 26:2K-7 to -64. Specifically, appellant argues that the Department's recertification regulations: (1) exceed the scope of the EMS Act by adding requirements beyond those for initial certification; (2) impermissibly delegate the Department's oversight of EMT-Paramedics by requiring an applicant to obtain the endorsement of a mobile intensive care unit (MICU) hospital and to demonstrate to its medical director the applicant's proficiency in skills approved for pre-hospital care; and (3) violate his right to due process because the regulations do not provide a pre-denial hearing and are overly vague.
By way of background, pursuant to the Health Care Facilities Planning Act (HCFPA), N.J.S.A. 26:2H-1 to -26, the Department is tasked with "central responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care services. . . ." N.J.S.A. 26:2H-1. Health care services include pre-hospital care[1] rendered by paramedical, advanced life support (ALS)[2], and ambulance services. . . ." *807 N.J.S.A. 26:2H-2b. Under the EMS Act, the Department regulates emergency medical services provided by EMT-Paramedics and the hospitals that operate MICUs.[3]N.J.S.A. 26:2K-8. As part of its delegated responsibility, the Department certifies EMT-Paramedics. N.J.S.A. 26:2K-8a.
To this end, the Commissioner of the Department must approve education programs for training EMT-Paramedics and establish written standards for their certification. N.J.S.A. 26:2K-8b. As such, pursuant to its statutory authority, the Department has promulgated regulations governing EMT-Paramedic and MICU certification as well as for ALS techniques approved for EMT-Paramedics. N.J.A.C. 8:41A-1.1 to -5.4. In order to obtain initial EMT-Paramedic certification, a candidate must be at least eighteen years old, possess a high school diploma, EMT-Basic, CPR, and other certifications, complete an EMT-Paramedic training program, and pass the National Registry EMT-Paramedic Certification Examination. N.J.A.C. 8:41A-4.1(b). Initial certifications are valid for a period of not less than twenty-four months, but no longer than thirty months. N.J.A.C. 8:41A-4.1(f).[4]
Because EMT-Paramedics are "trained in [ALS] and . . . render [ALS] services as part of a [MICU,]" N.J.S.A. 26:2K-7h, the EMS Act requires that they operate under the direct supervision of a licensed physician or physician-directed registered professional nurse who is affiliated with a MICU at a hospital accredited by the Department. N.J.S.A. 26:2K-10. Furthermore, all EMT-Paramedics are required to have direct voice communications with the supervising physician or nurse when providing ALS. Ibid. In this regard, only hospitals operating MICUs can perform ALS procedures. N.J.S.A. 26:2K-12a.
Prior to the expiration of the certification, an EMT-Paramedic must recertify with the Department. See N.J.A.C. 8:41A-4.3.[5] Recertification entails meeting requirements in addition to those for initial certification enumerated in N.J.A.C. 8:41A-4.1(b). The candidate must complete forty-eight hours of advanced level continuing education, demonstrate to the MICU hospital's medical director proficiency in all skills approved by the Department under N.J.A.C. 8:41A-5.1 for pre-hospital care, and receive the endorsement of a MICU hospital. N.J.A.C. 8:41A-4.3(a).
"Proficiency may be demonstrated based on actual observation, field performance, or other methods as deemed necessary by the medical director." N.J.A.C. 8:41A-4.3(a)(3)(i). The medical director must then "attest[] to the level of proficiency of each EMT-Paramedic seeking recertification." Ibid. The MICU hospital endorsement, N.J.A.C. 8:41A-4.3(a)(4), must include a verification by the MICU director or educator that the applicant has met all the requirements for recertification and that the applicant is physically capable of performing his or her duties as an EMT-Paramedic. N.J.A.C. 8:41A-4.3(a)(4)(i). A MICU hospital that chooses not to extend its endorsement for recertification must notify the Department with a *808 letter stating the hospital's reasoning. N.J.A.C. 8:41A-4.3(a)(4)(ii).
EMT-Paramedics may avoid expiration of their certification in one of two ways. An individual who is unable "to meet the recertification requirements due to personal illness or injury may be eligible for an extension of his or her EMT-Paramedic certification for a period of one year." N.J.A.C. 8:41A-4.3(h). The other available option is to enter "inactive status" by placing a request with the Department at least thirty days before the expiration of one's certification. N.J.A.C. 8:41A-4.5(a). An EMT-Paramedic on inactive status may not actively engage in the provision of ALS care. Ibid. An EMT-Paramedic on inactive status may return to active status by completing the requirements for recertification under N.J.A.C. 8:41A-4.3(a). N.J.A.C. 8:41A-4.5(b)(1). If, on the other hand, an EMT-Paramedic allows his or her certification to expire, he or she may seek subsequent recertification by completing the requirements for initial certification under N.J.A.C. 8:41A-4.1, as well as an additional 200 hours of clinical training, during which the applicant will be considered an EMT-Paramedic student. N.J.A.C. 8:41A-4.4.
The Department is authorized to revoke or suspend the certification of an EMT-Paramedic, after notice and a hearing, for violations of any provision of the EMS Act or its implementing regulations. N.J.S.A. 26:2K-9. If the Department suspends, revokes, or refuses to issue or renew an EMT-Paramedic certification, the aggrieved party is entitled to written notice and a hearing within thirty days. N.J.A.C. 8:41A-5.3(b). Suspensions or revocations of certifications are effective thirty days after mailing of the notice, unless the aggrieved party requests a hearing. Ibid. The revocation or suspension will then be held in abeyance until the hearing has been concluded. N.J.A.C. 8:41A-5.3(b)(1)(i). However, refusals to issue or renew EMT-Paramedic certifications are immediately effective, even during the pendency of an adjudicatory hearing. N.J.A.C. 8:41A-5.3(b)(2).
Appellant is an EMT-Paramedic currently on inactive status pursuant to N.J.A.C. 8:41A-4.5. He received his initial certification in June 2000 after graduating from the University of Medicine and Dentistry of New Jersey's Mobile Intensive Care Paramedic Program, and obtained several recertifications thereafter. His last certification was set to expire on December 31, 2008.
Appellant had been employed as an EMT-Paramedic by Robert Wood Johnson University Hospital until he was removed from that position by the MICU medical director and discharged in August 2007. Recognizing that he could not meet the regulatory requirements for recertification under N.J.A.C. 8:41A-4.3(a)(3) and (4) because he was no longer employed by a MICU at the time his certification was to expire, appellant, through counsel, wrote the Department on December 15, 2008, requesting a waiver therefrom, arguing that the recertification regulations were invalid because they: (1) unlawfully delegated the Department's certification authority to private entities; (2) transcended the EMS act; and (3) violated his due process rights by not affording a pre-deprivation hearing.
The Department treated appellant's December 15, 2008 request as a Petition for Rulemaking, 41 N.J.R. 2348(b) (June 1, 2009), which appellant opposed in a letter on April 28, 2009. On November 2, 2009, the Department denied appellant's request, noting that the MICU endorsement requirement for recertification does not contravene the EMS Act, which expressly makes that criterion "an essential element *809 of the applicant's satisfaction of the statutory definition of a mobile intensive care paramedic, in that it indicates that the applicant is `part of a [MICU].'" 41 N.J.R. 4128(b) (Nov. 2, 2009). The Department further concluded that a hearing was not required under the EMS Act or the corresponding regulations prior to the expiration of an individual's EMT-Paramedic certification. Ibid.
On appeal, as noted, appellant contends the Department's recertification regulations improperly delegate agency oversight responsibility to private hospitals and individuals, exceed the scope of the authorizing statute, and deprive him of procedural and substantive due process. We disagree.

I.
We start by iterating some well-settled principles of administrative law. "Administrative regulations are accorded a presumption of validity." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999). Judicial deference arises "from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are `particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that . . . rulemaking would invite.'" Ibid. (quoting Bergen Pines Cnty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 474, 476 A.2d 784 (1984)). Thus, our "scope of review of an administrative regulation is `highly circumscribed[.]'" Ibid. (quoting Lower Main St. Assocs. v. N.J. Hous. & Mortg. Fin. Agency, 114 N.J. 226, 236, 553 A.2d 798 (1989)). Agency regulations will not be reversed unless the regulation "violates the enabling act's express or implied legislative policies." In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, 117 N.J. 311, 325, 566 A.2d 1154 (1989). The party challenging the validity of the regulations "bears the burden of proving that the regulations are arbitrary, capricious or unreasonable." League of Municipalities, supra, 158 N.J. at 222, 729 A.2d 21.
Here, appellant argues that because the Department requires the endorsement of a MICU hospital or its medical director when recertifying an EMT-Paramedic, the agency has unlawfully subdelegated its administrative authority to private entities or individuals. On this score, we have long recognized that the power "delegated by statute to an administrative agency cannot be subdelegated in the absence of any indication that the Legislature so intends." Mercer Council # 4, N.J. Civil Serv. Ass'n v. Alloway, 119 N.J.Super. 94, 99, 290 A.2d 300 (App.Div.), aff'd 61 N.J. 516, 296 A.2d 305 (1972). By the same token, however, an agency may impliedly delegate administrative authority, if it is consistent with the legislative purpose. See R.H. Macy & Co. v. Dir., Div. of Taxation, 77 N.J.Super. 155, 177, 185 A.2d 682 (App.Div.1962), aff'd, 41 N.J. 3, 194 A.2d 457 (1963).
In Mercer Council # 4, supra, the Civil Service Commission was delegated by statute the responsibility of promulgating administrative procedures governing the promotion and compensation of state employees. 119 N.J.Super. at 99, 290 A.2d 300. The Commission adopted an implementing regulation that provided that each respective state agency would determine the promotion criteria for its own employees. Ibid. We held that the regulation violated the Civil Service Act because the Commission did not have the express or implied authority to subdelegate its responsibility. Id. at 99-100, 290 A.2d 300.
We have similarly held that the power to decide licensure, "may not be validly delegated *810 to a private person or body, not subject to public accountability, particularly where the exercise of such power is uncontrolled by adequate legislative standards inhibiting arbitrary or self-motivated action by such private parties." N.J. Dep't of Transp. v. Brzoska, 139 N.J.Super. 510, 513, 354 A.2d 650 (App.Div.1976). In Brzoska, supra, the Department of Transportation created a condition of licensure requiring that pilots receive written authorization from an airport. 139 N.J.Super. at 512-13, 354 A.2d 650. We found that the regulation constituted an improper subdelegation because it did not create any standards by which the airport could deny the pilots its authorization. Id. at 513-14, 354 A.2d 650. Without any objective criteria to measure eligibility, therefore, the airport could arbitrarily deprive the pilot of receiving licensure. Ibid.
In this case, the EMS Act expressly authorizes the Department to certify EMT-Paramedics and to establish standards by which they will be certified. N.J.S.A. 26:2K-8. But, unlike Mercer Council # 4, supra, where the Civil Service Act vested sole control of promotion and compensation determinations with the Civil Service Commission, the EMS Act impliedly authorizes the Department to assign certain responsibilities to the MICU medical directors and their hospitals. Specifically, the EMS Act explicitly provides that an EMT-Paramedic can only work for the MICU of an accredited hospital and must render ALS services under the supervision of that hospital's medical staff. N.J.S.A. 26:2K-9, -10, -12. Since an EMT-Paramedic may only render ALS "when acting as a staff member of a MICU, which is operated under the direction of a licensed MICU hospital[,]" 41 N.J.R. 4128(b); N.J.A.C. 8:41A-4.3(a)(4), it is neither arbitrary nor unreasonable for the Department to require that the applicant for recertification receive the endorsement of the MICU hospital and demonstrate to the MICU's medical director proficiency in the skills necessary to provide advanced life support services. In other words, because the EMS Act requires an EMT-Paramedic to practice only under a licensed physician, it is entirely reasonable to have the physician observe the applicant and evaluate whether he or she is proficient in skills approved for EMT-Paramedics. Indeed, MICU hospitals and their medical staff are in the best position to both assess whether an EMT-Paramedic has the ability to offer such services and provide an endorsement to the Department. By ensuring that certified EMT-Paramedics are able to provide quality services, the regulatory requirements of an endorsement and demonstration of the necessary skills for pre-hospital care advance the goals and intent of both the HCFPA and the EMS Act. As such, they do not constitute an unlawful delegation of the authority vested in the Department by the Legislature. On the contrary, the Department exercises the ultimate decision-making authority and the input from MICUs and their medical staff remains simply an intermediary regulatory precondition to the recertification determination.
Moreover, unlike the regulation at issue in Brzoska, supra, the Department's endorsement and demonstration requirements articulate clear and objective standards by which the medical directors must abide when verifying that the requirements for recertification have been met. For example, a medical director must specifically attest to the candidate's proficiency in skills approved by the Department as specified in N.J.A.C. 8:41A-5.1. That regulation provides a complete checklist of skills by which to measure an EMT-Paramedic's proficiency. Ibid. Consequently, the standards set forth therein are sufficiently definite to provide "fairly predictable *811 decisions." Cooper Univ. Hosp. v. Jacobs, 191 N.J. 125, 143, 922 A.2d 731 (2007).
In contrast, in Brzoska, airport officials could withhold their endorsement for any reason, however arbitrary, including personal animus. The regulations at issue here, however, only allow for the denial of recertification for a limited number of specifically identifiable, readily ascertainable and substantively objective reasons. Thus, the Department's assignment of responsibility in the recertification process is both narrowly designed and tightly controlled by clearly defined standards and is entirely consistent with the legislative scheme. We discern no impermissible delegation of authority by the Department.

II.
Appellant next argues that the regulations in issue exceed the statutory authority by, in the first instance, requiring recertification, and second, by imposing requirements beyond those for initial certification, including "proficiency" and the use of field performance as a measure of proficiency, which are beyond the Department's legislative mandate. According to appellant, because the EMS Act limits the initial certification requirements to "successful completion of an educational program . . . and . . . pass[ing] an examination in the provision of advance[d] life support services," N.J.S.A. 26:2k-8(b), the Department is prohibited from imposing any other eligibility criteria upon recertification. We find no merit in this contention.
As noted, administrative regulations will not be invalidated unless they "violate[] the enabling act's express or implied legislative policies." In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, supra, 117 N.J. at 325, 566 A.2d 1154. That is to say, administrative authority may be implicit in the legislative policy creating agency authorization. League of Municipalities, supra, 158 N.J. at 223, 729 A.2d 21. Thus, "`[t]he absence of an express statutory authorization in the enabling legislation will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation.'" Ibid. (quoting A.A. Mastrangelo, Inc. v. Comm'r of the Dep't of Envtl. Prot., 90 N.J. 666, 683-84, 449 A.2d 516 (1982)). On this score, declarations of public policy in enabling legislation serve as strong support for implementing regulations related to the furtherance of that policy. In re Promulgation of Rules of Practice, 132 N.J.Super. 45, 49, 332 A.2d 209 (App.Div.1974), certif. denied, 67 N.J. 95, 335 A.2d 47 (1975). "Ultimately, a court's role when analyzing a statute is to give effect to the Legislature's intent as evidenced by the `language of [the] statute, the policy behind it, concepts of reasonableness and legislative history.'" D'Ambrosio v. Dep't of Health & Senior Servs., 403 N.J.Super. 321, 334, 958 A.2d 110 (App.Div.2008) (quoting Johnson Mach. Co. v. Manville Sales Corp., 248 N.J.Super. 285, 303-04, 590 A.2d 1206 (App.Div.1991)).
While admittedly the EMS Act does not expressly so provide, recertification is implicitly authorized under the statutory scheme. As noted, the overall purpose of the HCFPA and the EMS Act is to ensure the highest possible quality health care, including pre-hospital emergency medical services, to residents of this State. N.J.S.A. 26:2H-1; see also N.J.S.A. 26:2K-8. To that end, the EMS Act requires, as a continuing qualification, EMT-Paramedic oversight and supervision by MICU medical directors and staff. Because applicants will not have worked under a MICU medical director at the *812 time of initial certification, recertification is necessary to ensure implementation of, and compliance with, this statutory requirement.
The fact that the EMS Act expressly provides for preconditions to certification does not mean that the Department is unable to set additional requirements in its regulation of EMT-Paramedics. Clearly, the statutory prerequisites establish only minimum standards deemed absolutely necessary by the Legislature for successful certification as an EMT-Paramedic, and leave ample room for supplementation by the Department. In fact, the Legislature explicitly mandated that the Department, with the approval of the Board of Medical Examiners, establish written standards, which the EMT-Paramedic "shall meet in order to obtain certification." N.J.S.A. 26:2K-8(b). Under this grant of authority, the Department has adopted additional requirements for those seeking recertification as part of the agency's ongoing regulatory mission. These requirements simply incorporate and implement the statutory mandate that all functioning EMT-Paramedics operate under the auspices of a MICU medical director, N.J.S.A. 26:2K-10, and by doing so, further the legislative policy of ensuring safe emergency medical services.
We have already held, concerning a different category of EMTs, namely those who provide basic life support services (EMT-Bs), that even though the EMS Act did not contain any specific provision for their training and certification, the Department had the statutory authority to regulate EMT-Bs. D'Ambrosio, supra, 403 N.J.Super. at 335, 958 A.2d 110. We reasoned that any person who was an EMT-B had to first be, by necessity, an EMT, and, under the EMS Act, that person had to be certified by the Commissioner of the Department, and it was "entirely reasonable that the same Department that certifie[d] all other types of EMTs and paramedics would also be responsible for certifying EMT-Bs." Id. at 335-41, 958 A.2d 110. We further held that the legislative authorization included the power of the Commissioner not only to certify, but as well recertify EMT-Bs throughout the State. Id. at 343, 958 A.2d 110. This conclusion, we found, was "supported by the text of the EMS Act, the policies behind that statute, and common sense." Ibid.
We perceive no meaningful difference here. Requiring recertification of EMT-Paramedics in accordance with clearly defined standards comports with expressly-declared public policy and falls well within the regulatory authority vested in the Department by the Legislature.

III.
Lastly, appellant argues that the recertification regulations violate due process by not affording a pre-denial hearing. Specifically, he contends that because the lack of an endorsement would result in the denial of his recertification application, appellant should be given a pre-deprivation hearing to challenge a MICU hospital's refusal to endorse him. We find no due process violation as a post-denial hearing affords appellant all the process due.
As a threshold matter, we note that appellant's certification has been neither revoked nor suspended. If such adverse action were taken against him, appellant would be entitled to notice and a pre-denial hearing. N.J.A.C. 8:41A-5.3(b)(1). In fact, the Department has taken no action whatsoever against appellant's certification, which remains on inactive status. While on inactive status, appellant is free to seek employment with an authorized MICU hospital and activate his EMT-Paramedic *813 certification with the Department when such employment is secured. In the event certification were then denied, appellant would be entitled to a hearing. N.J.A.C. 8:41A-5.3(b)(2).
The failure to also provide a pre-denial hearing does not, in our view, offend notions of due process. There is no protectible property right in continuing or future certification since any existing property interest in the certification is extinguished upon its expiration. With respect to recertification, as the EMS Act expressly provides, an EMT-Paramedic can only work for a MICU of an authorized hospital, N.J.S.A. 26:2K-7, -12, and render care under the direct supervision of that hospital's medical staff. N.J.S.A. 26:2K-10. Because there is no protected right to such employment, there is no corresponding legitimate claim of entitlement to recertification, which by regulation, is made contingent on receiving the endorsement and approval of a MICU hospital.
While "[a]n occupational license is in the nature of a property right," Graham v. N.J. Real Estate Comm'n, 217 N.J.Super. 130, 135, 524 A.2d 1321 (App.Div. 1987), "constitutional due process protects against only the improper suspension or revocation of a license; it does not protect against a licensing board's summary refusal to reinstate a license that has been revoked." Limongelli v. N.J. State Bd. of Dentistry, 137 N.J. 317, 326, 645 A.2d 677 (1993); see also Graham, supra, 217 N.J.Super. at 135-36, 524 A.2d 1321. In Graham, we held that real estate salespersons, whose licenses had lapsed due to failure to pay annual renewal fees, did not have a vested property right in their licenses under a predecessor statute giving them five years to renew their licenses without having to attend school and pass an examination. Id. at 136-37, 524 A.2d 1321. Thus, a later amendment to the real estate licensing statute reducing the time period in which lapsed or expired licenses can be reinstated without further education and examination (to two consecutive years of non-renewal) did not violate the salespersons' due process rights. Id. at 138-39, 524 A.2d 1321.
In Limongelli, the petitioner was a dentist whose license had been suspended by the Board of Dentistry for five years due to several financial disclosure violations. 137 N.J. at 321, 645 A.2d 677. The petitioner filed for relicensure at the end of his suspension period, and was denied reinstatement prior to a hearing before the Board, which summarily extended his suspension for an additional ten years based on evidence of interim wrongdoing by the petitioner. Id. at 323-24, 645 A.2d 677. The Court held that the petitioner had no constitutional or statutory right to a hearing in connection with his application for relicensure, id. at 325-28, 645 A.2d 677, although as a matter of procedural fairness, the Board should have informed him that it was considering extending his period of suspension and allowed the petitioner to respond to the allegations of wrongdoing raised by the Board. Id. at 328, 645 A.2d 677.
As noted, appellant's certification has neither been revoked nor suspended so as to warrant entitlement to a pre-deprivation hearing. His existing property interest in the certification having been extinguished on its expiration, we find that due process is satisfied by according appellant a hearing following a denial of his recertification application.
For all these reasons then, the Department's recertification regulations are valid.
Affirmed.
NOTES
[1] Pre-hospital care consists of "those emergency medical services rendered by mobile intensive care units to emergency patients before and during transportation to emergency treatment facilities, and upon arrival within those facilities." N.J.S.A. 26:2K-7j.
[2] Advanced life support is "an advanced level of pre-hospital, inter-hospital, and emergency service which includes basic life support functions, cardiac monitoring, cardiac defibrillation, telemetered electrocardiography, administration of anti-arrhythmic agents, intravenous therapy, administration of specific medications, drugs and solutions, use of adjunctive ventilation devices, trauma care and other techniques and procedures authorized in writing by the commissioner." N.J.S.A. 26:2K-7a.
[3] A MICU is a "specialized emergency medical service vehicle staffed by [MICU] paramedics. . . trained in advanced life support nursing and [is] operated for the provision of advanced life support services under the direction of an authorized hospital." N.J.S.A. 26:2K-7i.
[4] Newly enacted N.J.S.A. 26:2K-63, effective August 1, 2010, provides that EMT certifications shall be valid for five years.
[5] The recertification regulations were re-adopted on December 8, 2009. See 42 N.J.R. 475(a).