**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2135-17T3

JUST PUPS, LLC and VINCENT
LOSACCO,

    Plaintiffs-Appellants,

v.

TOWNSHIP OF EAST HANOVER
and CARLO DILIZIA,

    Defendants-Respondents.

_____

> Submitted December 18, 2018 – Decided January 24, 2019
>
> Before Judges Hoffman and Geiger.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0963-17.
>
> Anthony X. Arturi, attorney for appellants.
>
> O'Donnell McCord, PC, attorney for respondents (Jonathan Testa, on the brief).

PER CURIAM

Plaintiffs Just Pups, LLC (Just Pups) and Vincent LoSacco appeal from Law Division orders granting defendants Township of East Hanover (Township) and Carlo DiLizia summary judgment dismissing plaintiffs' complaint and denying plaintiffs' motion for partial summary judgment. We affirm.

We derive the following facts from the motion record. Every municipality must have a board of health. N.J.S.A. 26:3-1. In the case of a municipality formed under the Faulkner Act, N.J.S.A. 40:69A-115 to -132, another board or body performs the functions of a local board of health. The governing body of a Faulkner Act Municipality may exercise the functions of a local board of health. N.J.S.A. 26:3-1.

The Township operates as a "Small Municipality Plan A" optional form of government under the Faulkner Act. The Township's Council acts as the local Board of Health. DiLizia serves as Director and Health Officer for the Township's Department of Health and Human Services.

The Township regulates the licensing and sanitary conditions of all commercial kennels and pet shops within its boundaries through ordinances published in Chapter 173 of the East Hanover Code (Code). The Township requires every kennel and pet shop to "annually apply for and obtain a license from the Township Board of Health." Code § 173-10. Each application must

be accompanied by "written approval of the Township Health Officer showing compliance with the local and State rules and regulations governing the location and sanitation at such establishments." Ibid.

Pursuant to Code § 173-12, kennel and pet shop licenses are:

> subject to revocation by the Board of Health on recommendation of the State Department of Health or the Township Health Officer for failure to comply with applicable provisions of [Chapter 173] or the rules and regulations of the State Department of Health or of the Township Board of Health governing the same, after the licensee has been afforded a hearing by either the State Department of Health or the Township Board of Health.

Vincent LoSacco is the owner of Just Pups. The Township issued a kennel/pet shop license to Just Pups on January 6, 2016, with an expiration date of December 31, 2016. The License expressly states: "This is to certify that the above licensee . . . agreed to comply and abide by all the provisions of the N.J. State Codes [and] is hereby permitted to operate the above business. This license is also subject to suspension/revocation due to noncompliance."

Beginning on January 2, 2017, DiLizia and several Registered Environmental Health Specialists (REHS) from the Township's Department of Health discovered health violations at Just Pups's pet shop (the pet shop). DiLizia and Sergeant Frank Rizzo, II, of the New Jersey SPCA Humane Police,

A-2135-17T3

found Vincent Losacco in the process of transporting thirty-two puppies into the pet shop without veterinarian certificates confirming the canines are free from contagious disease.

On January 10, 2017, DiLizia filed thirty-two complaints against plaintiffs in East Hanover Municipal Court for violating State Department of Health regulations for the sanitary operation of pet shops, codified at N.J.A.C. 8:23A-1.13.[1] The next day, Just Pups applied for a renewal of its pet shop license.

Over the course of the next month, DiLizia and the Township's REHS conducted follow-up inspections of the pet shop on January 23, February 1, and February 3, 2017. Each inspection revealed additional health violations. As a result of the investigations, DiLizia issued a quarantine order affecting the entire facility effective February 3, 2017. In total, fifty-three of the canines removed from plaintiff's possession had confirmed cases of various diseases, including Giardia, kennel cough, and/or pneumonia.

Due to the ongoing health violations, DiLizia issued a formal Recommendation For Revocation of Pet Shop License (Recommendation) that the Township revoke and not renew the pet shop license issued to Just Pups.

---

[1] A temporary restraining order was issued by the municipal court against plaintiffs. The municipal court matters otherwise remained stayed pending the outcome of this appeal.

A-2135-17T3

The Recommendation listed nineteen alleged violations and stated the investigation "confirmed and/or [gave] reason to suspect the existence of a zoonotic or other communicable disease that would be harmful to human or animal health in several animals currently housed at the facility." The Recommendation also stated the licensee:

> (1) failed to maintain proper hygiene, sanitation, and disease control, and exercise reasonable care in safeguarding the health of animals in its custody; (2) sold, [or] offered for sale, a substantial number of animals that licensee knew or reasonably should have known, to be unfit for purchase; and/or (3) failed to comply with the rules and regulations of the State and the Township.
>
> The chronic violations discovered by the Local Health Authority at Just Pups, LLC, are detrimental to the health, safety, and welfare of the animals housed therein and the public at large.

While the license renewal application was pending, the State also recommended Just Pups's license not be renewed.

On February 20, 2017, the Township served plaintiffs with the Recommendation and written notice that a public hearing as to the renewal/revocation of the License was scheduled before the Town Governing Body, on March 6, 2017. The hearing to determine whether to revoke or renew the pet shop license took place as scheduled before the Township Council, acting

as the local board of health.  Plaintiffs were represented by counsel at the hearing.

Plaintiffs argued that Township Council lacked authority to suspend or revoke the license because the local health authority did not hold a hearing and take testimony before issuing the Recommendation, in violation of N.J.S.A. 56:8-96.  The hearing proceeded over plaintiffs' objections.

DiLizia, Township REHS Elyssa Loiacono, and licensed veterinarian Dr. Andrea Serrano-Pribula, testified at the hearing.  LoSacco also testified and submitted evidence during the hearing.  DiLizia, Loiacono, and Dr. Serrano-Pribula each described the health violations they discovered at plaintiffs' pet shop in January and February 2017.  Plaintiffs had the opportunity to cross-examine the Township's witnesses but elected to cross-examine only DiLizia.

At the conclusion of the hearing, the Township voted to revoke and not renew the pet shop license.  On April 3, 2017, the Township adopted a resolution (the Resolution) embodying the findings and conclusions made during the hearing.

Plaintiffs filed a four-count complaint in the Law Division.  The complaint alleged violation of due process (count one); violation of 42 U.S.C. § 1983 (count two); violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A.

10:6-1 to -2 (count three); and that adoption of the Resolution revoking the pet shop license was unlawful, arbitrary, capricious, and unreasonable (count four). Plaintiffs demanded compensatory, punitive, and consequential damages, injunctive relief, invalidation of the Resolution, attorney's fees and costs of suit.

While this matter was before the trial court, the Township received an affidavit from Missouri Licensed Veterinarian, Dr. Dale Alumbaugh, dated June 7, 2017. Dr. Alumbaugh's affidavit confirms certain health certificates plaintiff presented to DiLizia as proof that veterinarian care and examination were falsified.

On July 5, 2016, the State filed a Chancery Division action against Just Pups and LoSacco alleging they violated the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20; the regulations governing the sale of animals, N.J.A.C. 13:45A-12.1 to -12.3; the Pet Purchase Protection Act, N.J.S.A. 56:8-92 to -97; and the regulations governing general advertising, N.J.A.C. 13:45A-9.1 to -9.8.[2]

The parties to the Chancery action agreed to resolve the claims against defendants Just Pups and LoSacco, including the State's claims that Just Pups and LoSacco accepted deposits at their pet shop in East Hanover for animals prior to having the animals examined by a veterinarian licensed to practice in

---

[2] <u>Porrino v. Just Pups, LLC</u>, No. C-184-16 (Ch. Div. June 22, 2017).

A-2135-17T3

New Jersey, and had included in the animal's history and health certificates statements that were false, by a final consent judgment entered on June 22, 2017. Among other things, the consent judgment permanently enjoined plaintiff from owning, managing, and/or operating a pet shop or kennel, or acting as a breeder or broker in New Jersey. The consent judgment also permanently enjoined LoSacco from serving as an employee, advisor, consultant, independent contractor and/or agent of any pet shop, kennel, breeder and/or broker in New Jersey. In addition, Just Pups and LoSacco agreed to pay civil penalties of $290,000, restitution of $30,163.73, and investigation costs of $5876.48.

Defendants subsequently moved to dismiss plaintiffs' complaint or alternatively for summary judgment. Plaintiffs cross-moved for partial summary judgment on counts one and two. Following oral argument on November 27, 2017, the Law Division judge issued separate orders and written statements of reasons granting defendant's motion and denying plaintiffs' cross-motion. This appeal followed.

Plaintiffs raise the following points:

> I. IT WAS NOT THE TOWN THAT WAS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, IT WAS PLAINTIFF WHERE IT WAS UNDISPUTED THAT NO HEARING WAS HELD BY THE LOCAL HEALTH AUTHORITY PRIOR TO

ISSUANCE OF A RECOMMENDATION TO THE MUNICIPALITY, AS THE STATUTE REQUIRED.

A. THE TOWNSHIP HAD NO AUTHORITY TO REVIEW, SUSPEND OR REVOKE THE JUST PUPS LICENSE PURSUANT TO N.J.S.A. 4:19-15.8c BECAUSE THE LOCAL HEALTH AUTHORITY (ADMITTEDLY MR. DILIZIA) DID NOT HOLD THE HEARING THAT WAS FIRST REQUIRED BEFORE IT COULD MAKE A RECOMMENDATION TO THE TOWNSHIP COUNCIL.

B. PLAINTIFF, NOT DEFENDANT, WAS ENTITLED TO JUDGMENT ON COUNTS ONE AND TWO OF ITS CLAIM FOR VIOLATION OF PROCEDURAL DUE PROCESS AND DEPRIVATION OF PROPERTY RIGHTS UNDER COLOR OF LAW.

We review the grant or denial of summary judgment de novo, applying

the same standard used by the trial court, which:

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

We also determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Ft. Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

The United States Constitution provides no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The New Jersey Constitution recognizes people have "certain natural and unalienable rights," which include "enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const. art. 1, ¶ 1. Although our State Constitution does not reference "due process," it protects "values like those encompassed by the principle[] of due process." Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985). "In examining a procedural due process claim, we first assess whether a liberty or property interest has been interfered with by the State, and second,

whether the procedures attendant upon that deprivation are constitutionally sufficient." Doe v. Poritz, 142 N.J. 1, 99 (1995) (citing Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994)).

Within this framework, "[a]n occupational license is in the nature of a property right." Santaniello v. N.J. Dep't of Health & Sr. Servs., 416 N.J. Super. 445, 460 (App. Div. 2010) (alteration in original) (quoting Graham v. N.J. Real Estate Comm'n, 217 N.J. Super. 130, 135 (App. Div. 1987)). However, "[t]here is no protectable property right in continuing or future [licensure] since any existing property interest in the [license] is extinguished upon its expiration." Id. at 459. Accordingly, "constitutional due process protects against only the improper suspension or revocation of a license; it does not protect against a licensing board's summary refusal to reinstate a license that has been revoked." Id. at 460 (quoting Limongelli v. N.J. State Bd. of Dentistry, 137 N.J. 317, 326 (1993)).

"Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "The minimum requirements of due process . . . are notice and the opportunity to be heard." Doe, 142 N.J. at 106 (citing U.S. v. Raffoul, 826 F.2d 218, 222 (3d Cir. 1987)); see also Goss v. Lopez, 419 U.S. 565 (1975). However, procedural due process

is a flexible concept dependent upon the particular circumstances of a case. Zinermon v. Burch, 494 U.S. 113, 127 (1990). The following factors must be weighed to determine what process a given case requires:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [Ibid. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976))].

In cases where a property interest is deprived by state action in violation of procedural due process, the harm may be remedied by conducting whatever process was originally due post-deprivation and damages need not be made available. See Parratt v. Taylor, 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."). See also Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 380 (1996) ("Because the State provided an adequate post-deprivation remedy to redress the

12

aberrant conduct of the board member or the Board, plaintiffs' rights to procedural due process were not violated.").

Section 1983 provides "a method of vindicating federal rights elsewhere conferred." Rivkin, 143 N.J. at 363 (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A successful § 1983 claimant may recover compensatory and punitive damages, as well as attorney's fees and costs. Section 1983 allows for punitive damages against state actors in their individual capacity upon a showing of maliciousness. Smith v. Wade, 461 U.S. 30 (1983). However, municipalities are immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).

The NJCRA serves as a state analog to § 1983. While the Act allows claims for substantive due process violations, "[a] procedural due process claim cannot be brought under the NJCRA." Mattson v. Aetna Life Ins. Co., 124 F.Supp. 3d 381, 390 (D.N.J. 2015) (quoting Major Tours, Inc. v. Colorel, 799 F.Supp. 2d 376, 405 (D.N.J. 2011) (noting "[t]he NJCRA was specifically amended to limit the legislation's scope to substantive due process")).

Plaintiff essentially argues he was entitled to two hearings, one before DiLizia issued his recommendation to revoke or not renew the pet shop license, and the hearing he in fact received before Township Council. For this reason,

he contends he was entitled to summary judgment rather than defendants, as it is undisputed no hearing occurred prior to DiLizia issuing his recommendation. To be successful, plaintiff's argument requires a strained reading of N.J.S.A. 4:19-15.8(c) and N.J.S.A. 56:8-96 for the proposition that a hearing must be afforded prior to the issuance of a recommendation.

Defendants first argue this case is moot in light of the Final Consent Judgment that permanently enjoins them from owning or operating a pet shop in the State. We disagree because the Final Consent Judgment was entered approximately six months after the pet shop license expired and more than two months after the Resolution was adopted. Plaintiff's theory for compensatory damages is based on his economic loss incurred in the time lapse between the Township passing their resolution to revoke or not renew plaintiff's License and when plaintiff entered the settlement agreement with the Attorney General. Thus, plaintiff's claim, if successful, provides a path to some damages. See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 267 (2001) (noting plaintiff's "claim is not moot to the extent that it seeks monetary damages").

Defendants next contend summary judgment dismissing the complaint was appropriate because plaintiff received notice of a hearing, attended the

hearing with representation, and was allowed an opportunity to cross-examine and be heard. Defendants note plaintiffs' argument is founded on an unsupported interpretation of New Jersey law. We agree.

Plaintiff received notice and a hearing before Township Council, acting as the local board of health, yet argues he did not receive procedural due process. Relying on the language of N.J.S.A. 4:19-15.8(c) and 56:8-96, plaintiff insists a hearing should have been conducted prior to DiLizia issuing the Recommendation.

N.J.S.A. 4:19-15.8(c) provides:

> The license for a pet shop shall be subject to review by the municipality, upon recommendation by the Department of Health or the local health authority for failure by the pet shop to comply with the rules and regulations of the State department or local health authority governing pet shops or if the pet shop meets the criteria for recommended suspension or revocation provided under subsection c. or d. of section 5 of [N.J.S.A. 56:8-96], after the owner of the pet shop has been afforded a hearing pursuant to subsection e. of section 5 of [N.J.S.A. 56:8-96].
>
> [Id. (emphasis added).]

In turn, N.J.S.A. 56:8-96(e) provides:

> Pursuant to the authority and requirements provided in section 8 of [N.J.S.A. 4:19-15.8], the owner of the pet shop shall be afforded a hearing and, upon the recommendation by the local health authority pursuant

to subsection c. or d. of this section, the local health authority, in consultation with the Department of Health, shall set a date for the hearing to be held by the local health authority or the State Department of Health and shall notify the pet shop involved. The municipality may suspend or revoke the license, or part thereof, that authorizes the pet shop to sell cats or dogs after the hearing has been held and as provided in section 8 of [N.J.S.A. 56:8-96]. At the hearing, the local health authority or the Department of Health, whichever entity is holding the hearing, shall receive testimony from the pet shop and shall determine if the pet shop: (1) failed to maintain proper hygiene and exercise reasonable care in safeguarding the health of animals in its custody, or (2) sold a substantial number of animals that the pet shop knew, or reasonably should have known, to be unfit for purchase.

[Id. (emphasis added).]

Both statutes solely reference "hearing" in the singular. Only an obtuse reading of these statutes would suggest two hearings must be provided.

More fundamentally, in a Faulkner Act Municipality such as the Township, the governing body serves as the local board of health. Therefore, interpreting these statutes to require two hearings by the same governmental entity would make no sense. We will not interpret a statute in a way that leads to an absurd result. DiProspero v. Penn, 183 N.J. 477, 493 (2005).

In any event, an analysis of what process a given case requires is properly guided by weighing the following factors: (1) the private interest affected by

16

state action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  Mathews, 424 U.S. at 335.

An assessment of the competing interests reveals the hearing on notice afforded to plaintiffs satisfied procedural due process requirements.  At the hearing, plaintiffs were represented by counsel, were permitted to present witnesses and evidence, were given the opportunity to confront their accusers through cross-examination, and were permitted to present legal argument, thereby enjoying all of the hallmarks of a trial.  Moreover, it is unclear what purpose a second hearing would have served.

We further note, plaintiffs' property interest in the pet shop license expired on December 31, 2016.  Therefore, it appears plaintiff's property interest in the license was extinguished.  Santaniello, 416 N.J. Super. at 459.

Additionally, as found by the motion judge, local governments are unequivocally permitted to exercise their police power over the licensing and enforcement of dog regulations for the public's protection.  Nicchia v. New York, 254 U.S. 228, 230-31 (1920) (noting "[p]roperty in dogs is of an imperfect

or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any Federal right"). Here, the pet shop was operated in a manner that promoted the spread of communicable diseases, as evidenced by the removal of more than fifty canines infected by Giardia, kennel cough, or pneumonia.

Weighing the three factors, we conclude plaintiffs' constitutional rights were not violated. Plaintiffs were afforded all of the process they were due and suffered no compensable damages. The decision to revoke or not renew the pet shop license was not arbitrary, capricious, unreasonable, or unlawful. Therefore, the motion judge properly granted summary judgment dismissing the complaint.

Plaintiffs' remaining arguments – to the extent that we have not addressed them – lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2135-17T3