**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0970-22

BOROUGH OF MADISON and
BOROUGH OF CHATHAM,

     Petitioners-Appellants,

v.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL
PROTECTION and NEW JERSEY
INFRASTRUCTURE BANK,

     Respondents-Respondents.

_____

        Argued September 23, 2024 – Decided October 10, 2024

        Before Judges Sabatino, Gummer and Jacobs.

        On appeal from the New Jersey Department of Environmental Protection and New Jersey Infrastructure Bank, Docket Nos. 20-01/S340715-07A and 20-01/S340715-07B.

        Matthew Joseph Giacobbe argued the cause for appellants (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Bradley D. Tishman, of counsel and on the briefs).

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondents New Jersey Infrastructure Bank and New Jersey Department of Environmental Protection (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey D. Padgett, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Environmental Protection, joins in the brief of respondent New Jersey Infrastructure Bank.

PER CURIAM

This appeal concerns a change made by two state agencies to the long-term loan ratio used in loans they extended to two municipalities for the renovation and upgrade of their joint sewerage system. The municipalities challenged the ratio change, arguing it was disallowed under contractual language and the applicable law. An administrative law judge ("ALJ") rejected their arguments, and the agencies each adopted the ALJ's determination with slight modification. The municipalities now appeal. For the reasons that follow, we affirm.

I.

Since the facts and procedural history are well known to the parties, we need not describe the background comprehensively. The following concise summary will suffice for present purposes.

2                                                                    A-0970-22

Appellants, the Boroughs of Madison and Chatham, are members of the Madison-Chatham Joint Meeting, an entity created to provide, maintain, and operate a sewerage system and treatment facility in Madison and Chatham. Their sewerage system was first built in the early 1900s and needed upgrading.

Respondents, the Department of Environmental Protection ("DEP") and the New Jersey Infrastructure Bank ("I-Bank"), a unit in but not of Treasury, administer the New Jersey Environmental Infrastructure Financing Program, which provides low-cost financing packages for environmental infrastructure and clean water projects. See N.J.S.A. 58:11B-3, -10.1.

In April 2019, the Boroughs executed notes to procure short-term funding from respondents to upgrade a water treatment facility and construct an additional building ("the Project"). The 2019 notes contained a 75% "Fund Portion," which was to be funded with DEP funds and would not accrue interest, and a 25% "I-Bank Portion," a sum that would accrue an interest rate ranging from zero percent to the market rate (collectively, "the 75/25 Ratio"). The I-Bank interest rate was zero percent until July 2021, after which the Boroughs were charged interest.

Specifically, Madison executed a short-term note from I-Bank in the amount of $4,770,000, and Chatham executed a short-term note from I-Bank for

A-0970-22

$2,730,000. The maturity dates for both notes were set at April 5, 2021. Both notes contained identical definitions for Fund Portion and I-Bank Portion.

The Boroughs contend they had believed the 75/25 Ratio for their short-term notes would also apply to long-term loans, should the need to refinance arise. That belief was based in part on the agencies' previous use of the 75/25 Ratio beginning in 2004 through the end of State Fiscal Year 2019.[1] They contend they budgeted accordingly.

In October 2019, the DEP authorized the Joint Meeting to advertise the Project for bids. Following the bidding process, the DEP in January 2020 authorized the Joint Meeting to award the contract to a specified construction firm in the amount of $7,215,000. The DEP certified the Project on February 18, 2020.[2]

---

[1] DEP changed the funding ratio in 2004 after Governor McGreevey signed the Dam, Lake, Stream, Flood Control, Water Resources, and Wastewater Treatment Project Bond Act of 2003, L. 2004, c. 162, which allocated about $45,000,000 to DEP to make loans to local governments to improve and maintain wastewater treatment systems. As a result, DEP was able to offer a new 75/25 funding ratio, rather than the 50/50 ratio, for loans. N.J. Dep't of Env't Prot., Final Clean Water Intended Use Plan for Fed'l Fiscal Year 2004, 2 (2004).

[2] At oral argument on appeal, counsel advised that the work on the Project is nearly complete.

In 2020, the Boroughs were informed their long-term loans would be subject to a 50% Fund Portion and 50% I-Bank Portion funding ratio ("the 50/50 Ratio"). According to the Boroughs' calculations, the 50/50 Ratio would result in higher interest costs to them of over $1 million compared to the 75/25 Ratio.

The 50/50 Ratio was adopted following a series of DEP publications and notifications dating back to 2017 that previewed the possibility of such a change. These notices were published on the DEP and I-Bank websites, as well as emailed to lists of borrowers, including counsel for the Joint Meeting. They included a December 2017 notice of a future public hearing, online notices, and a second notification in December 2018 of the public hearing. The public hearing occurred on January 7, 2020. The Boroughs did not have a representative attend the public meeting, nor did they offer any comment on the anticipated ratio change.

In its March 2019 publication, the DEP detailed its plans for the I-Bank program for the upcoming State Fiscal Year 2020 ("SFY20"), which began on July 1, 2019, and ended on June 30, 2020. N.J. Dep't of Env't Prot., Final Clean Water Intended Use Plan for Fed'l Fiscal Year 2019 (& State Fiscal Year 2020), (2019) ("2020 IUP"). In that publication, the DEP announced that throughout SFY20, it would "continue to offer very attractive low-cost financing packages,

including principal forgiveness (or grant-like funding) and low interest loans for high priority projects." Id. at 2. However, the DEP explained that in SFY20, its Clean Water State Revolving Fund base program would "consist of 50% funding from the I-Bank at market rate and 50% funding from the DEP at 0% interest with opportunities for principal forgiveness. Prior to long-term funding, projects are encouraged to seek a short-term loan from the I-Bank for activities from planning through construction completion." Ibid (emphasis added).

The DEP explained there were "insufficient funds to continue to provide the very generous financing packages offered in prior years," so the ratio reverted from the 75/25 Ratio to the 50/50 Ratio. Id. at 3.

The Boroughs contested in the Office of Administrative Law the agencies' decision to change the ratio. The agencies and the Boroughs both moved for summary disposition. In March 2022, the ALJ denied the Boroughs' motion and granted the agencies' motion. The ALJ concluded the long-term loans should be issued at the 50/50 Ratio, as the agencies had directed.

Among other things, the ALJ concluded the program regulations "gave notice to [the Boroughs] of the trigger that would determine the terms of the long-term loans that were 'anticipated' but not yet executed," and that the regulations provided sufficient information regarding the upcoming change in

A-0970-22

the funding ratio. Additionally, the ALJ found no merit to the Boroughs' argument that they received no notification of the impending ratio change.

Both the DEP and I-Bank issued final agency decisions adopting the ALJ's ruling, with slight modifications to clarify or update the facts of the case. In the meantime, the Boroughs executed a long-term loan agreement at the 50/50 Ratio, with a reservation of their rights to relief in the present appeal.

The Boroughs appeal, arguing that the agencies' use of the 50/50 Ratio in the long-term loan: (1) is arbitrary and capricious, and therefore invalid, and (2) is contrary to the terms of their original short-term loans. They also urge us to spare their local taxpayers the additional costs produced by applying the 50/50 Ratio.

II.

A final administrative agency decision should not be overturned "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence." In re Carter, 191 N.J. 474, 482 (2007) (quoting Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). If there is substantial evidence in the record to support the agency's decision, "a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127

A-0970-22

N.J. 500, 513 (1992). The party challenging the administrative action bears the burden of showing the agency's decision was arbitrary, capricious, or unreasonable. Lavezzi v. State, 219 N.J. 163, 171 (2014). Under the "arbitrary or unreasonable" standard, review is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).]

As to the above-listed factors concerning legislative policies, a reviewing court gives "effect to the Legislature's intent as evidenced by the 'language of [the] statute, the policy behind it, concepts of reasonableness, and legislative history.'" Santaniello v. N.J. Dep't of Health & Senior Servs., 416 N.J. Super. 445, 457 (App. Div. 2010) (quoting D'Ambrosio v. Dep't of Health & Senior Servs., 403 N.J. Super. 321, 334 (App. Div. 2008)).

Applying these standards of review, we affirm the agencies' decisions to apply a 50/50 Ratio to the Boroughs' long-term loans. We do so substantially for the sound reasons articulated by the ALJ and ratified by the DEP and the I-Bank. The agencies' decisions were reasonable and neither arbitrary nor

8

capricious. Nor was it precluded by the terms of the short-term loan agreements. Moreover, the agencies' decisions were consistent with the legislative delegation of authority under the I-Bank program. We amplify these conclusions with the following discussion.

The Legislature enacted the New Jersey Infrastructure Trust Act (L. 1985, c. 334) when it found the "water supply needs of the State are so great that the funds allocated" to the construction, rehabilitation, operation, and maintenance of water supply facilities needed to be "augmented and maximized, to the extent practicable." N.J.S.A. 58:11B-2. It also created the I-Bank, "a body corporate and politic," N.J.S.A. 58:11B-4, which was given the power to "[m]ake and contract to make loans" to local governments, public water facilities, or private persons to finance the cost of various water supply and wastewater treatment projects. N.J.S.A. 58:11B-5(m).

The I-Bank is governed by regulations contained in N.J.A.C. 7:22-3.1 to -3.46. These regulations specify that the I-Bank may offer loans for up to the full cost of allowable projects "but may offer a range of options regarding the term, interest rate and level of loan funding." N.J.A.C. 7:22-4.6(a) (emphasis added).

9

The I-Bank must submit a financial plan to the Legislature detailing the obligations of the trust, loans made to local governments, and proposed operations for the upcoming fiscal year. N.J.S.A. 58:11B-21.1. This plan must be approved by the Legislature; until it is approved, or if the plan is disapproved, the I-Bank "shall not undertake any of the proposed activities contained" in the plan. N.J.S.A. 58:11B-22.1. "Interest on the Trust loan will accrue as indicated in the financial plan submitted to the Legislature" once that plan is approved and put into effect. N.J.A.C. 7:22-4.6(b).

Here, the agencies established with substantial evidence that the funding ratio change was necessary so they could "offer competitive loan rates and ensure long-term viability for the Water Bank." 2020 IUP, at 3. The change manifestly aligns with the legislative directive to augment and maximize the funds under I-Bank's control while assuring funds are available for future use. The agencies submitted the proposed change in funding ratio to the Legislature, which was approved.

It would be unreasonable to conclude that the change in funding ratio would violate legislative policies or intent. In fact, the appropriation of State funds for the Boroughs' Project has been approved by the Legislature, expressly subject to the 50/50 Ratio for their long-term loans. Originally, in May 2020,

the Legislature considered a bill "appropriating moneys to the Department of Environmental Protection for the purpose of making zero interest loans or principal forgiveness loans to project sponsors to finance a portion of the costs of environmental infrastructure projects." S. 2499/A. 4299 (2020). Approved on July 1, 2020, this appropriations act for SFY20 authorized the DEP:

> to adjust the allowable [DEP] loan amount for projects authorized in this section to between zero percent and 100 percent of the total allowable loan amount, and, if the [DEP] loan amount is adjusted to 100 percent of the total allowable loan amount, the loan shall be provided pursuant to the terms and conditions of the financing program year in which the trust issued an interim financing program loan for the project or, in the absence of an interim financing program loan, the terms and conditions of the State fiscal year 2021 financing program.
>
> [L. 2020, c. 49, § 3(c).]

Madison was specifically authorized by the Legislature to receive a loan of $5,000,000, with up to $3,750,000 (or seventy-five percent) deemed "Estimated Allowable DEP Loan Amount," and Chatham was legislatively authorized to receive a loan of $3,000,000, with $2,250,000 (or seventy-five percent) deemed the "Estimated Allowable DEP Loan Amount." L. 2020, c. 49, § 3(a)(1). This is reflective of Madison's $4,770,000 short-term loan and Chatham's $2,730,000 short-term loan, both funded at the 75/25 Ratio, as

11

detailed in their April 2019 notes.  These loans were "subject to the terms and conditions of the financing program year in which the trust issued an interim financing program loan for the project or, in the absence of an interim financing program loan, the terms and conditions of the State fiscal year 2021 financing program."  L. 2020, c. 49, § 4(b).  At that time, "[f]or project costs greater than $4 million up to and including $10 million, 75 percent of the loan shall be a zero interest rate fund loan and 25 percent of the loan shall be a trust market rate loan."  L. 2020, c. 49, § 1(b)(1) (emphasis added).

A companion bill was approved, "authorizing the expenditure of funds by the New Jersey Infrastructure Bank for the purpose of making loans to eligible project sponsors to finance a portion of the cost of construction of environmental infrastructure projects."  S. 2498/A. 4298 (2020).  Approved on July 1, 2020, Chatham and Madison were authorized to receive the same total loan amounts, with seventy-five percent of each loan deemed "Estimated Allowable Trust Loan Amount."  L. 2020, c. 48, § 4(a).  The I-Bank was further authorized:

> to adjust the allowable trust loan amount for projects authorized in this section to between zero and 100 percent of the total allowable loan amount, and, if the trust loan amount is adjusted to 100 percent of the total allowable loan amount, the loan shall be provided pursuant to the terms and conditions of the financing program year in which the trust issued an interim financing program loam for the project or, in the

12

absence of an interim financing program loan, the terms and conditions of the State fiscal year 2021 financial program.

[L. 2020, c. 48, § 4(c).]

However, ensuing legislation enacted in 2021, i.e., S. 3812/A. 5588 (2020), changed Chatham's and Madison's loans from $3,000,000 and $5,000,000, respectively, to a loan to the Joint Meeting in the amount of $7,289,180 with $5,466,885 (about seventy-five percent) as the "Estimated Allowable DEP Loan Amount." L. 2021, c. 203, § 3(a)(1). This more precise number reflects the amount of $7,215,000 awarded to the Project contractor and approved by the DEP in February 2020. As enacted, the Appropriations Atc incorporates and adopts the SFY20 financial plan, including the 50/50 Ratio change for all projects certified in SFY20.

Critically, the 2021 legislation mandates that "[f]or project costs greater than $4 million and up to and including $10 million, the loan shall have a blended interest rate of 50 percent of the trust's market rate." L. 2021, c. 203, §1(b)(1) (emphasis added).[3] The Boroughs' Project, which involves a contract

---

[3] The language change from L. 2020, c. 49, § 1(b)(1) was made to reflect a new source of I-Bank's funding, namely from the Water Infrastructure Finance and Innovation Act, 33 U.S.C. § 3901 to 3915, and the resulting change in the calculation of interest. Dep't of Env't Prot., Final Clean Water Intended Use

award of approximately $7 million, falls within this $4 to $10 million range. Hence, the Legislature has directed that the terms of financing of the Boroughs' Project for SFY20 must be at a 50/50 Ratio, not at the 75/25 Ratio that had governed the short-term loans extended in the earlier fiscal year.

Because the Legislature has singled out the Boroughs' Project and made it subject to the revised loan ratio through the applicable Appropriations Act, we are obligated to carry out that legislative intent. Unless a legislative enactment is unconstitutional, the Judiciary has no authority to disregard or nullify it. New Jersey Republican State Comm. v. Murphy, 243 N.J. 574, 610 (2020).

It is also clear that the agencies' change in the ratio was produced by legitimate budgetary constraints and, accordingly, is neither arbitrary nor capricious. The agencies have the prerogative to deal with those fiscal constraints by offering somewhat less advantageous loan terms in order to continue financing numerous sewerage improvement projects within the State.

As found by the ALJ, the Boroughs had fair notice as early as 2017 of the prospect of a future change in the 75/25 Ratio. The Boroughs had a reasonable opportunity to plan for such a potential change accordingly.

---

Plan for Fed'l Fiscal Year 2021 (& State Fiscal Year 2022), 3 (2019). In essence, this language refers to and mandates the 50/50 Ratio.

A-0970-22

Lastly, we agree with the agencies that the terms of the short-term loan agreements do not disallow the use of a 50/50 Ratio for the long-term loans. The short-term loan agreements each define the word "loan" differently from the "Anticipated Long Term Loan." The 75/25 Ratio plainly covers only the short-term loans, and not future "anticipated" long-term loans. The contracts are silent on what ratio would apply to the long-term loans. We reject the Boroughs' effort to impute into those contracts long-term provisions that simply are not there.

The Boroughs have urged us to reverse the decisions of the agencies and the ALJ because of the financial burden those decisions will cause for their local taxpayers. But a reversal would merely shift that financial burden to the State taxpayers who fund the DEP and the I-Bank. We discern no justification for doing so.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0970-22